UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES - GENERAL

| Case No. | CV 21-2955 PA (MRWx) | Date | January 21, 2022 |
|---|---|---|---|
| Title | Larry Barragan, et al. v. Kinder Morgan, Inc., et al. | | |

| Present: The Honorable | PERCY ANDERSON, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Kamilla Sali-Suleyman | Not Reported | N/A |
| Deputy Clerk | Court Reporter | Tape No. |
| Attorneys Present for Plaintiffs: | | Attorneys Present for Defendants: |
| None | | None |

**Proceedings:** IN CHAMBERS – COURT ORDER

Before the Court is a Motion for Preliminary Approval of Class Action Settlement ("Motion") filed by plaintiffs Larry Barragan and Frank Calandrino ("Named Plaintiffs"). (Docket No. 28.) Defendants Kinder Morgan, Inc. and Kinder Morgan Terminals, Inc. (collectively, "Defendants") do not oppose the Motion. Plaintiffs seek preliminary approval of a proposed class action settlement for Defendants' alleged failure to provide rest and meal breaks and violation of other provisions of California law. Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court previously found that the matter was appropriate for decision without oral argument and vacated the hearing calendared for January 24, 2022.

## I.    Factual and Procedural Background

On February 22, 2021, Named Plaintiffs, on their own behalf and on behalf of the putative class members, commenced their class action in Los Angeles Superior Court. (See Notice of Removal (Docket No.1.) Defendants removed the action on April 5, 2021 based on diversity jurisdiction. As alleged in the original complaint, Plaintiff Larry Barragan works as a Head Gauger in the tank farm at the Carson Terminal and Plaintiff Frank Calandrino works as a Head Gauger in the tank farm at the Los Angeles Harbor Terminal. The Named Plaintiffs seek to represent current and former non-exempt hourly employees in the same or comparable positions. (Docket No. 1-4, Complaint ¶¶ 31-32). The tank farms, or oil pipeline and terminal facilities owned by Defendants, operate 24 hours a day, seven days a week. (Id. ¶ 14) Named Plaintiffs work 12-hour shifts on a rotating shift schedule and allege that Defendants have not provided them with rest breaks. (Id. ¶ 15) Instead, each plaintiff alleges that Defendants "required him to monitor his unit, respond to upsets and critical events, and maintain the safe and stable operation of the unit," as well as "required him to remain attentive, carry a radio, and be reachable at all times." (Id. ¶ 16) As a result, according to the complaint, Plaintiffs never receive off-duty breaks and accompanying premium-pay remedy from Defendants for each workday during which they are not provided the required off-duty rest breaks. (Id. ¶ 18) Named

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-2955 PA (MRWx) | Date | January 21, 2022 |
|---|---|---|---|
| Title | Larry Barragan, et al. v. Kinder Morgan, Inc., et al. | | |

Plaintiffs further allege that Defendants also failed to maintain complete and accurate payroll records that include wages for missed rest breaks, among other information. (Id. ¶ 19.)

     The original complaint asserted claims for: (1) failure to authorize and permit rest periods (California Labor Code §§ 226.7, IWC Wage Order 1-2001 ); (2) failure to furnish accurate wage statements (California Labor Code.§§ 226 and 226.3); (3) recovery of civil penalties under the Private Attorneys General Act (California Labor Code § 2698 et seq.); and (4) violation of the California Unfair Competition Law (Bus. & Prof. Code § 17200 et seq.) (Complaint ¶¶ 33-59.) In addition to damages, civil penalties, and other statutory remedies, Named Plaintiffs sought "preliminary and permanent injunctive relief enjoining Defendants from violating the relevant provisions of the California Labor Code." (See id.) After filing the Motion, the Court granted the parties' stipulation to file a First Amended Complaint to: (1) include claims for failure to provide meal periods under California Labor Code §§ 226.7, 512, and IWC Wage Order 1-2001; and (2) to clarify "the class definition to include all current and former hourly employees of Defendants who worked as a Gauger or Ops Coordinator at the Carson or Los Angeles Harbor Terminals since February 22, 2017." (Docket Nos. 29-31.) According to the parties, the settlement they reached contemplated the addition of a meal period claim to this action.

     On August 6, 2021, Named Plaintiffs filed a Notice of Settlement and the Court later granted twice, in October and December, the parties' request to extend the deadline for filing a motion for preliminary approval. (See Docket No. 25, 27.) The Motion requests that the Court: (1) preliminarily approve the class action settlement totaling $385,000; (2) conditionally certify a Federal Rules of Civil Procedure 23 settlement class; (3) approve and appoint Named Plaintiffs as representatives; (4) approve and appoint class counsel; (5) approve and appoint the Settlement Administrator; (6) preliminarily approve class counsel of attorneys' fees of up to $96,250 and costs of up to $10,000; (7) preliminarily approve a Service Payment award of $5,000 to the Named Plaintiffs; (8) preliminarily approve the Private Attorneys General Act penalty payment of $4,000; (9) preliminarily approve settlement administration costs of up to $5,000; (10) approve the proposed Notice of Class Action Settlement; and (11) set the Final Approval Hearing. (Mot. 1-2).

     The parties executed the Joint Stipulation of Class Action Settlement and Release ("Settlement Agreement" or "Agreement") attached to Young's Declaration as Exhibit 1 on December 17, 2021. (Young Decl., Ex. 1 (Docket No. 28-3)). The Settlement Agreement provides for the certification of one class and is a non-reversionary settlement in which Defendants are required to pay the entire gross settlement amount. (Agreement ¶ 26.) Specifically, the Agreement contains the following class definition:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-2955 PA (MRWx) | Date | January 21, 2022 |
|---|---|---|---|
| Title | Larry Barragan, et al. v. Kinder Morgan, Inc., et al. | | |

"Class" or "Class Members" shall mean: All current and former hourly employees of Kinder Morgan, Inc. or Kinder Morgan Terminals, Inc. who worked as a Gauger or Ops Coordinator at the Carson or Los Angeles Harbor Terminals, who do not request to exclude themselves (i.e. opt out) from the settlement. (Agreement ¶ 5.) "Class Period" shall mean the period from February 22, 2017, through the date of Preliminary Approval. ( Id. ¶ 6.)

## II. Preliminary Rule 23 Class Certification

The parties request that the Court preliminarily approve the Settlement Agreement under Federal Rules of Civil Procedure "Rule 23 settlement class" which the Court construes as certification of a class for settlement purposes only pursuant to Rule 23(b)(3). A plaintiff seeking a Rule 23(b)(3) class certification must first satisfy the prerequisites of Rule 23(a). Once subsection (a) is satisfied, the purported class must then fulfill the requirements of Rule 23(b)(3).

### A. Rule 23(a) Requirements

Rule 23(a) establishes four prerequisites for class action litigation: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. Fed. R. Civ. P. 23(a).

#### 1. Numerosity

The numerosity prerequisite is met if "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). To establish that joinder of all members is "impracticable," the plaintiff need not show that it would be "impossible" to join every class member. Haley v. Medtronic, Inc., 169 F.R.D. 643, 647 (C.D. Cal. 1996). There is no specific number requirement, as the court may examine the specific facts of each case. Ballard v. Equifax Check Servs., Inc., 186 F.R.D. 589, 594 (E.D. Cal. 1999).

Here, Plaintiffs' complaint proposes a class of approximately 35 members although the declaration in support of the Motion lists 38 class members. (Young Decl. ¶ 6.) The "Supreme Court has held fifteen is too small." Harik v. California Tchrs. Ass'n, 326 F.3d 1042, 1051 (9th Cir. 2003); Rannis v. Recchia, 380 F. App'x 646, 651 (9th Cir. 2010) ("In general, courts find the numerosity requirement satisfied when a class includes at least 40 members.") "Where the class is not so numerous . . . factors such as the geographical diversity of class members, the ability of individual claimants to institute separate suits, and whether injunctive or declaratory relief is sought, should be considered in determining impracticability of joinder." Jordan v. Los

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-2955 PA (MRWx) | Date | January 21, 2022 |
|---|---|---|---|
| Title | Larry Barragan, et al. v. Kinder Morgan, Inc., et al. | | |

Angeles Cty., 669 F.2d 1311, 1319 (9th Cir.), vacated on other grounds, 459 U.S. 810, 103 S.Ct. 35, 74 L.Ed.2d 48 (1982). Despite the fairly modest size of the class, the Court is inclined to find that, in light of the relatively small amounts of individual claims and Named Plaintiffs' pursuit of declaratory relief, the numerosity requirement is met.

### 2. Commonality

The commonality requirement is met if "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The commonality requirement is construed "permissively." Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998). All questions of fact and law need not be common; rather, "[t]he existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." Id. "'What matters to class certification . . . is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers.'" Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350, 131 S. Ct. 2541, 2551, 180 L. Ed. 2d 374 (2011) (quoting Richard Nagareda, Class Certification in the Age of Aggregate Proof, 84 N.Y.U. L. Rev. 97, 132 (2009)).

"Although only one common question of law or fact is needed, this case presents a number of common questions of law or fact that "drive the resolution" of the claims of the putative class." Spann v. J.C. Penney Corp., 307 F.R.D. 508, 518 (C.D. Cal. 2015), modified, 314 F.R.D. 312 (C.D. Cal. 2016). Here, Plaintiffs assert multiple common questions of fact and law including: (1) whether Defendants failed to authorize and permit Plaintiffs to take rest periods in accordance with applicable California law; (2) whether Defendants failed to keep complete and accurate records of wages for missed rest periods in accordance with applicable California law; and (3) whether Defendants maintain or have maintained policies that adequately provided for off-duty rest periods in accordance with applicable California law. (Docket No. 1-4, Complaint ¶ 25.) The Court finds that Named Plaintiffs present shared legal issues concerning whether Defendants' implementation of workplace policies is unlawful. Any minor factual differences stemming from each absent settlement class member's work shift do not defeat commonality. See Wright v. Linkus Enterprises, Inc., 259 F.R.D. 468, 472 (E.D. Cal. 2009). Here, Named Plaintiffs establish commonality because they allege Defendants' challenged practices applied equally to the absent settlement class members and that all Defendant employees have been harmed by Defendant's failure to provide rest and meal periods. Accordingly, the Court concludes that the commonality requirement is met.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-2955 PA (MRWx) | Date | January 21, 2022 |
|---|---|---|---|
| Title | Larry Barragan, et al. v. Kinder Morgan, Inc., et al. | | |

### 3. **Typicality**

Typicality requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Representative claims are "typical" if they are "reasonably co-extensive with those of absent class members"; they "need not be substantially identical." Hanlon, 150 F.3d at 1020. However, class representatives "must be able to pursue [their] claims under the same legal or remedial theories as the unrepresented class members." In re Paxil Litigation, 212 F.R.D. 539, 549 (C.D. Cal. 2003).

In the present case, Named Plaintiffs, as the representative parties, allege that the claims asserted in the complaint stem from the same factual circumstances and could be alleged by any member of the absent settlement class. Plaintiffs' claims are premised on exactly the same widespread practice or policy that settlement class members were subjected to: Defendants' failure to authorize and permit nonexempt employees to take rest periods and failure to provide off-duty meal periods. Accordingly, the Court finds that the typicality requirement is met.

### 4. **Adequacy of Representation**

Rule 23(a) also requires that the representative parties be able to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Adequate representation 'depends on the qualifications of counsel for the representatives, an absence of antagonism, a sharing of interests between representatives and absentees, and the unlikelihood that the suit is collusive.'" Crawford v. Honig, 37 F.3d 485, 487 (9th Cir.1994) (quoting Brown v. Ticor Title Ins. Co., 982 F.2d 386, 390 (9th Cir.1992)). Representation is adequate if the plaintiffs: (1) "do not have conflicts of interest with the proposed class" and (2) are "represented by qualified and competent counsel." Dukes v. Wal-Mart, Inc., 509 F.3d 1168, 1185 (9th Cir. 2007). At the heart of this requirement is the "concern over settlement allocation decisions." Hanlon, 150 F.3d at 1020.

Here, Plaintiffs and their counsel appear to be qualified and competent. The record does not support a finding that they do not satisfy the requirements of the Rule. Loc. Joint Exec. Bd. of Culinary/Bartender Tr. Fund v. Las Vegas Sands, Inc., 244 F.3d 1152, 1162 (9th Cir. 2001). Like other members of the class, the Named Plaintiffs are nonexempt employees at Defendants' facilities at the Carson and Los Angeles Harbor Terminals. No obvious conflicts of interest appear to exist between Named Plaintiffs and their counsel on the one hand, and the absent settlement class members on the other hand. Nor does the record suggest unique defenses that apply only to Named Plaintiffs or that would otherwise suggest that they are inadequate representatives. Additionally, Named Plaintiffs' counsel has extensive experience in class action

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-2955 PA (MRWx) | Date | January 21, 2022 |
|---|---|---|---|
| Title | Larry Barragan, et al. v. Kinder Morgan, Inc., et al. | | |

and wage and hour law litigation, including representation of unionized workers in state and federal court. (Young Decl. ¶¶ 39-41.)

The Court therefore concludes that Named Plaintiffs have satisfied the prerequisites of Rule 23(a). The Court next considers whether the requirements of Rule 23(b)(3) are met.

**B.    Rule 23(b)(3) Requirements**

Rule 23(b)(3) requires the Court to find that: (1) "the questions of law or fact common to class members predominate over any questions affecting only individual members," and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

**1.    Predominance of Common Questions**

The predominance inquiry tests "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Hanlon, 150 F.3d at 1022. This analysis requires more than proof of common issues of law or fact. Id. Rather, the common questions must "present a significant aspect of the case [that] they can be resolved for all members of the class in a single adjudication." Id.

"When the claim is that an employer's policy and practices violated labor law, the key question for class certification is whether there is a consistent employer practice that could be a basis for consistent liability." Kamar v. Radio Shack Corp., 254 F.R.D. 387, 399 (C.D. Cal. 2008). Class certification is usually appropriate where "liability turns on an employer's uniform policy that is uniformly implemented, since in that situation predominance is easily established." Id. Common claims predominate where a company-wide policy governs how employees spend their time and/or how they are paid. See, e.g., Wright v. Linkus Enterprises, Inc., 259 F.R.D. 468, 473 (E.D. Cal. 2009) (finding predominance, despite minor factual difference between individual class members, where the case involved "alleged policies that required class members to work without compensation, meal and rest periods, and/or reimbursement for expenses"); In re Wells Fargo Home Mortg. Overtime Pay Litig., 527 F. Supp. 2d 1053, 1065-68 (N.D. Cal. 2007) (finding predominance where, as a general matter, the defendant's policy and practice regarding compensation and exemption was uniform for all putative class members).

Here, all the claims turn on Defendants' failure to authorize or permit rest periods and meal periods, which Named Plaintiffs argue violates California law. Although the focus of the action is the legality of Defendants' rest and meal break policy and practices, there may be some individualized determination based on employment status within the class period. But the

Case 2:21-cv-02955-PA-MRW  Document 35  Filed 01/21/22  Page 7 of 12  Page ID #:465

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-2955 PA (MRWx) | Date | January 21, 2022 |
|---|---|---|---|
| Title | Larry Barragan, et al. v. Kinder Morgan, Inc., et al. | | |

existence of individualized damage assessments does not undermine the action's suitability for class certification. See Yokoyama v. Midland Nat. Life Ins. Co., 594 F.3d 1087, 1089 (9th Cir. 2010) (explaining that the "amount of damages is invariably an individual question and does not defeat class action treatment"). Accordingly, the predominance requirement is met.

### 2. Superiority

The superiority inquiry requires determination of "whether objectives of the particular class action procedure will be achieved in the particular case." Hanlon, 150 F.3d at 1023. Notably, the class-action method is considered to be superior if "classwide litigation of common issues will reduce litigation costs and promote greater efficiency." Valentino v. Carter-Wallace, Inc., 97 F.3d 1227, 1234 (9th Cir. 1996) (citation omitted).

Here, the commonality of the issues presented render the class action procedure a superior method to address the putative class members' claims. Because the claims of all settlement class members are virtually identical, there is no apparent reason that any given class member should need to pursue his or her claims individually. Moreover, the Court finds that individual class members would likely have little interest in prosecuting separate actions because each putative class member's claim is likely too small to justify the cost or risk of litigation. See Hanlon, 150 F.3d at 1023 ("Even if efficacious, these claims would not only unnecessarily burden the judiciary, but would prove uneconomic for potential plaintiffs."). Accordingly, Plaintiffs have satisfied the requirements of Rule 23(b)(3).

### III. Fairness of the Proposed Class Settlement

Rule 23(e) requires a district court to determine whether a proposed class action settlement is "fundamentally fair, adequate, and reasonable." Staton v. Boeing Co., 327 F.3d 938, 959 (9th Cir. 2003). To make this determination, the court must consider a number of factors, including: (1) the strength of plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. See id. Also, the settlement may not be the product of collusion among the negotiating parties. In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 458 (9th Cir. 2000).

At the preliminary approval stage, some of these factors cannot be fully assessed. Accordingly, a full fairness analysis is unnecessary. See Alberto v. GMRI, Inc., 252 F.R.D. 652, 665 (E.D. Cal. 2008); Reade-Alvarez v. Eltman, Eltman & Cooper, P.C., 237 F.R.D. 26, 34

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-2955 PA (MRWx) | Date | January 21, 2022 |
|---|---|---|---|
| Title | Larry Barragan, et al. v. Kinder Morgan, Inc., et al. | | |

(E.D.N.Y. May 2006). Rather, the court need only review the parties' proposed settlement to determine whether it is within the permissible "range of possible judicial approval" and thus, whether the notice to the class and the scheduling of the formal fairness hearing is appropriate. Wright v. Linkus Enters., 259 F.R.D. 468, 472 (E.D. Cal. 2009). "[T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." Hanlon, 150 F.3d at 1027. The Ninth Circuit has declared that a strong judicial policy favors settlement of class actions. See Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992).

The proposed settlement appears to be procedurally and substantively fair to the settlement class members.

    **A.**    **Strength of Plaintiffs' Case; Complexity and Likely Duration of Further Litigation; Extent of Discovery Completed and Stage of the Proceedings**

Named Plaintiffs and counsel claim to have worked closely together and with putative class members to "gain knowledge about the rest period policies and practices and the general working conditions of operators and gaugers." (Young Decl. ¶ 35.) Specifically, Plaintiffs obtained and reviewed "information at their worksite and through their union, the United Steelworkers, that was critical in assessing the case" including: Plaintiffs' personnel files, workplace manuals, and employee handbooks, organizational charts, an operations assessment report, job descriptions, payroll and wage data information, emergency procedures and rules, and multiple union agreements and policies." (Id. ¶ 33.) Their counsel claims to have "thoroughly investigated and researched the claims, potential defenses" and used the aforementioned documents "to assess Defendants' potential liability." (Id. ¶¶ 37-38.) Named Plaintiffs contend that they and the absent settlement class would face delayed recovery and other inherent risks if litigation were to continue based on Defendant's various defenses. (Id. ¶ 37.) It appears that the parties have spent a significant amount of time considering the issues and facts in this case and are in a position to determine whether settlement is a viable alternative.

Additionally, the parties attended a full-day mediation with Hon. Carla Woehrle (Ret.) of ADR Services Inc. via Zoom, and thereafter continued to negotiate and then accept a mediator's proposal on August 5, 2021. (Young Decl. ¶ 34.) The fact that the parties utilized an experienced mediator to reach the settlement agreement supports the notion that it was the product of an arms-length negotiation. Moreover, the Settlement Agreement is "contingent upon the Plaintiffs, and all their respective union, agreeing to and ratifying a Collective Bargaining Agreement Letter of Agreement/Side Letter pursuant to Labor Code section 226.75 in a form

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-2955 PA (MRWx) | Date | January 21, 2022 |
|---|---|---|---|
| Title | Larry Barragan, et al. v. Kinder Morgan, Inc., et al. | | |

agreed upon by the parties." (Agreement ¶ 23.) Labor Code section 226.75[1/] provides for rest period rules for an employer that operates a petroleum facility with an "employee holding a safety-sensitive position at a petroleum facility." Given the parties' litigation efforts and apparently ongoing negotiation, these factors favor granting preliminary approval to the Settlement Agreement.

### B. Amount Offered in the Settlement Agreement

Defendants stipulated to create a settlement fund ("Settlement Fund") in the amount of $385,000, with the net settlement, after the deduction of fees, costs, and administration totaling $260,750, which means that the average net payment to each class member will be approximately $6,861. (Agreement ¶ 25-26; Young Decl. ¶¶ 6-10.) Defendants would pay the employer's share of any payroll taxes (FICA and FUTA) for the wages it pays. (Agreement ¶ 25.) The Settlement Fund will include the following elements: (i) payments to class members depending on the number of 12-hour shifts worked, excluding leaves; (ii) payment to the State of California Labor and Workforce Development Agency ("LWDA") under PAGA; (iii) Service Awards paid to the 2 Named Plaintiffs; (iv) class counsel's attorneys' fees and costs; and (v) administrative costs. (Agreement ¶¶ 22-42.) Plaintiffs estimate that total damages for their principal claim, failure to provide duty-free rest breaks, at the time of the July 26, 2021 mediation, is about $679,664.51. (Young Decl. ¶ 7) Based on those calculations, Named Plaintiffs state the settlement amount is approximately 56% of the total damages they could have recovered on the rest break claim and that, although derivative claims could have increased this amount, those claims were dependent on the rest break claim. (Id.) "[I]t is well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the

---

[1/]The provision reads in part:

> (b) If a nonexempt employee covered by this section is affirmatively required to interrupt that employee's rest period to address an emergency, another rest period shall be authorized and permitted reasonably promptly after the circumstances that led to the interruption have passed. If circumstances do not allow for the employee to take such a rest period, the employer shall pay the employee one hour of pay at the employee's regular rate of pay for the rest period that was not provided.

As previously mentioned, Named Plaintiff's complaint requests injunctive relief. However, the Settlement Agreement does not explicitly discuss or contain an injunctive remedy regarding duty-free rest or meal breaks. The Court notes that the parties' negotiation with respect to this Labor Code section likely should address Defendants' future compliance with lawful meal and rest break policies.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-2955 PA (MRWx) | Date | January 21, 2022 |
|---|---|---|---|
| Title | Larry Barragan, et al. v. Kinder Morgan, Inc., et al. | | |

potential recovery that might be available to the class members at trial." Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc., 221 F.R.D. 523, 527 (C.D. Cal. 2004). Therefore, given the risk and uncertainty of the litigation, these payments in exchange for release of all potential claims under the operative complaint by members of the class appear reasonable. (See Agreement ¶ 50.)

According to the Settlement Agreement, Named Plaintiffs' counsel may request up to 33 % of the Settlement Fund (i.e. $128,325) as well as reimbursement of costs up to $10,000. (Agreement ¶ 33.) This estimate is a departure from the benchmark percentage of 25% established by the Ninth Circuit for calculating attorney's fees in common-fund settlements. See Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1047 (9th Cir. 2002). However, according to the Motion, Named Plaintiffs' intend to seek attorneys' fees of 25% of the fund, or $96,250. Named Plaintiffs also intend to apply for Service Awards worth $5,000. (Id.¶ 28.) This amount does not appear to be unreasonable, as awards typically range between $2,000 and $10,000. See Bellinghausen v. Tractor Supply Co., 306 F.R.D. 245, 267 (N.D. Cal. 2015) (collecting cases).

Additionally, $4,000 of the Settlement Fund has been allocated to PAGA penalties with 75% of the penalties ($3,000) being paid to the LWDA and 25% of the penalties ($1,000) being paid to the aggrieved employees (i.e. settlement class members). (Id. ¶¶ 41-42.) In support of this amount, Named Plaintiffs contend that the possible recovery on the PAGA claim is "within the Court's discretion and varies tremendously from hundreds to a few million dollars." (Young Decl. ¶ 9.) "To be eligible to file a claim under PAGA, an aggrieved employee must first submit his allegations of labor code violations to LWDA as well as to the employer." Porter v. Nabors Drilling USA, L.P., 854 F.3d 1057, 1060 (9th Cir. 2017). "[T]he civil penalty is one hundred dollars ($100) for each aggrieved employee per pay period for the initial violation and two hundred dollars ($200) for each aggrieved employee per pay period for each subsequent violation." Cal. Lab.Code § 2699(f)(2). The complaint alleges that Named Plaintiffs "are in the process of exhausting their administrative remedies as required by [the] Labor Code." Given the underdeveloped viability of this claim, it appears that the payment for penalties is likely tenable. Finally, the costs incurred by the Settlement Administrator is estimated to not exceed $5,000, and in light of the purported class size does not appear excessive. (Id. ¶ 39.) The Agreement provides that any uncashed checks be awarded cy pres to the University of California Hastings Workers Rights Clinic. (Id. ¶ 82.) The Court therefore concludes that the total settlement amount and proposed distribution of funds appears to be within a range of reasonableness and therefore favors preliminary approval of the Agreement.

### C. Experience and Views of Counsel

The Court finds that Named Plaintiffs' counsel has had sufficient experience with dozens of class action litigation dealing with Labor Code violations and in particular representing oil

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 21-2955 PA (MRWx) | Date | January 21, 2022 |
| Title | Larry Barragan, et al. v. Kinder Morgan, Inc., et al. | | |

refinery workers to appropriately assess the legal and factual issues in this matter and determine whether the proposed Settlement Agreement serves the interests of the class. Given that Named Plaintiffs' counsel believes the proposed Settlement Agreement is both fair and adequate, this also weighs in favor of preliminary approval.

> **D.** **Collusion between the Parties**

To determine whether there has been any collusion between the parties, courts must evaluate whether "fees and relief provisions clearly suggest the possibility that class interests gave way to self interests," thereby raising the possibility that the settlement agreement is the result of overt misconduct by the negotiators or improper incentives for certain class members at the expense of others. Staton, 327 F.3d at 961. Here, there is no evidence of overt misconduct. The proposed Settlement Agreement is the product of repeated negotiations between the parties and a mediation session. For all of these reasons, the Court concludes that the Agreement submitted is within the "range of possible judicial approval." Wright, 259 F.R.D. at 472.

**IV.** **Notice to the Class and Settlement Administration**

Under Federal Rule of Civil Procedure 23(e), this Court must "direct notice in a reasonable manner to all class members who would be bound by the proposal." Such notice is satisfactory if it "generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." Rodriguez v. West Publ'g Corp., 563 F.3d 948, 962 (9th Cir. 2009).

Here, the proposed notice regime in the Settlement Agreement is reasonably calculated to reach the members of the class. The Agreement sets forth a detailed notice regime involving, in short, the Settlement Administrator acquiring the mailing addresses for the settlement class members from Defendants and then disseminating a Notice of Settlement via U.S. Mail. (Agreement ¶ 67.) The Notice of Settlement includes: the number of Qualifying Shifts worked by the Class Member during the Class Period, a preliminary calculation of the amount the Class Member can expect to receive based on the number of Qualifying Shifts she or he worked, the contact information for counsel, information informing Class Members of their right to opt out, and a statement that the Agreement may have preclusive effect. (Id.) The proposed Notice also describes the essential terms of the proposed Agreement, including the role of the Settlement Administrator in determining Qualifying Shifts and arranging cash payments, procedure for initiating disputes regarding the number of qualifying shifts and procedures for opting out of the class and filing objections. The Court notes, however, that the Settlement Agreement states class members may "file written objection, along with any supporting documents, to the Court, on or before the Notice Response Date by mailing it to or filing it in person with the Court and send copies to the Settlement Administrator." (Id. ¶ 73.) Any objections should instead be sent

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-2955 PA (MRWx) | Date | January 21, 2022 |
|---|---|---|---|
| Title | Larry Barragan, et al. v. Kinder Morgan, Inc., et al. | | |

to either the Settlement Administrator or Named Plaintiffs' counsel, and Plaintiffs' counsel shall file all objections received with the Court.

The parties agree that the Notice of Settlement is to be mailed within 25 days from the entry of this Order. (Id. ¶¶ 65-67.) The parties therefore are ordered to issue settlement notices to the settlement class that are substantially in the form of the proposed notice submitted for the Court's approval, pursuant to the Settlement Agreement with the modification discussed above.

### Conclusion

For the reasons discussed above, Plaintiffs' Motion for Preliminary Approval is granted. The proposed class is provisionally certified for purposes of settlement only; the proposed notice and plan of dissemination to the settlement class is approved; the appointment of Larry Barragan and Frank Calandrino as class representatives is approved; the appointment of Gilbert & Sackman, a Law Corporation and Hadsell Stormer Renick & Dai LLP, as class counsel is approved; and CAC Services Group, LLC is approved to act as administrator for settlement purposes.

All previously scheduled pretrial and trial dates are vacated. The fairness hearing for final approval of the proposed Settlement Agreement is set for **May 9, 2022**, at 1:30 p.m. A motion for final approval of the Settlement Agreement, as well as any motion for attorneys' fees and costs, shall be filed on or before **April 5, 2022**. Any class member who wishes to object to the proposed Settlement Agreement must do so in writing. The deadline for sending written objections is 60 days after the initial mailing of notice by the settlement administrator. The deadline for Named Plaintiffs, Named Plaintiffs' counsel, Defendants, or Defendants' counsel to file any written response to class members' objections is **April 26, 2022**. To the extent the deadlines and instructions in this Order differ from the parties' Settlement Agreement, the parties are to follow this Order.

IT IS SO ORDERED.